IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
ASSIGNED ON BRIEFS DECEMBER 9, 2008

IN RE: ADOPTION OF T.L.H., A Minor Child

ERIK HOLT v. CHRISTOPHER LEE MORRIS, et ux, SARAH LYNN
MORRIS

Direct Appeal from the Chancery Court for Wayne County
No. 12105     Jim T. Hamilton, Chancellor

No. M2008-01408-COA-R3-PT - Filed January 21, 2009

This is an appeal from an order terminating a father's parental rights and granting a stepfather's petition for adoption. Because the final order does not contain sufficient findings of fact and conclusions of law justifying the trial court's decision, we vacate the order and remand for further proceedings.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Vacated and
Remanded

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

James Y. Ross, Sr., Waynesboro, TN, for Appellant

Paul A. Bates, Lawrwenceburg, TN, for Appellees

## OPINION

### I. FACTS & PROCEDURAL HISTORY

T.L.H. was born out of wedlock to Sarah Lynn Morris ("Mother") and Erik Holt ("Father") on May 23, 2000. Father was listed as T.L.H.'s father on his birth certificate. Father, Mother, and T.L.H. subsequently lived together until Father and Mother separated in 2004.

Around December of 2004, Father filed a petition for visitation in juvenile court and requested that the court legitimize T.L.H.. On May 2, 2005, the juvenile court entered an order declaring that Father is T.L.H.'s father and further addressing visitation and child support. Father was granted visitation with T.L.H. every other weekend on Saturdays and Sundays from 8:00 a.m. to 5:00 p.m. He was also ordered to pay $75 per week to Mother for past and current child support.

Mother married Christopher Lee Morris ("Stepfather") in June of 2005 and subsequently had two daughters. On October 17, 2007, Mother and Stepfather filed in chancery court a petition for adoption and for termination of Father's parental rights. They alleged that Father had willfully failed to visit and support T.L.H. for more than four months prior to the filing of their petition, that Father had failed to manifest an ability and willingness to assume legal and physical custody of T.L.H., and that termination of Father's parental rights was in T.L.H.'s best interest.

The chancery court held a hearing on the matter on June 2, 2008. Mother testified that after the previous juvenile court hearing in February of 2005, Father stopped paying his weekly child support obligation after only five weeks. According to Mother, Father did not attempt to pay any further child support until after she filed the termination petition in October of 2007. Mother also testified that Father had only exercised visitation with T.L.H. for three alternate weekends following the February 2005 hearing. Mother stated that she went with T.L.H. to the designated location for the parties' fourth visitation exchange, but Father was not there. Mother said she never called Father after that day, and Father never called her. Mother testified that Father had not seen T.L.H. since approximately April of 2005, nor had he sent any cards or gifts to T.L.H. in that time period. Mother stated that she had never refused to allow Father to see T.L.H.. Mother and Stepfather testified that T.L.H. calls Stepfather "Dad" or "Daddy."

Father admitted that he had not seen T.L.H. since early 2005. Father testified that he went to the designated location for his fourth visit with T.L.H. and waited for two hours, but Mother never showed up. He said he called Mother but she did not answer, so he drove by Mother's house but she was not home. Father's father also testified that he and Father went to Mother's house a few times but no one was home. Father testified that "shortly after that" he lost his cellular phone, which had Mother's phone number stored in it, so he was unable to call Mother again. Father said he did not try to see T.L.H. at his school because he did not want to cause trouble. Father said he did not attend T.L.H.'s baseball games because he feared that Mother would not let T.L.H. play sports if she saw Father at his games. He also said he did not go to court in an attempt to see T.L.H. because he was afraid he would be put in jail for failing to pay child support.

Father claimed that his failure to pay child support was not willful because he did not have enough money to pay it at the time. Father testified that he made seven or eight thousand dollars during the previous year and that he had never had a "regular job." Father said he worked "strike jobs" whenever he could, but he had not worked at a strike job for nearly six months at the time of trial. Father started work at a temporary job in South Carolina during the week prior to trial. Father also worked for his father pouring concrete, making ten to twelve dollars an hour. Father said he was unable to secure employment at most places because he was blind in one eye. Father had his driver's license taken away for failing to pay traffic citations, and he had been living on his family's farm for the past several years. Father's girlfriend was living with him and had given birth to a child just two weeks before trial. Father testified that he intended to "save up [his] money" so that he could regularly pay child support for T.L.H. in the event that his parental rights were not terminated.

At the conclusion of the testimony, the trial court requested that the attorneys prepare proposed findings and decrees. The trial court subsequently entered a final order providing, in relevant part:

> It is, accordingly,
> ORDERED, ADJUDGED, AND DECREED that the Petition of [Stepfather] and [Mother], and specifically [Stepfather], to adopt the minor child, [T.L.H.], is granted, the Court finding that said adoption is in the best interest of said minor child, and said adoption is hereby granted. The parental rights of [Father], with respect to the minor child, [T.L.H.], are terminated, the Court finding that the abandonment of the minor child who is the subject of this proceeding was willful.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the record will reflect that the foregoing was a recommendation of [the guardian ad litem] . . . .
>
> . . . .
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court has grave reservations with respect to the credibility of [Father] and his father. Their testimony was simply not credible and offered no logical explanation as to why [Father] has not exercised visitation with said minor child nor paid child support since April, 2005, and [Father] has made no efforts whatsoever in this regard. In particular, the Court is disturbed over the fact that within the past month, [Father] and his live-in girlfriend had a child born and yet [Father] has not satisfied his legal obligation established in the Order of Paternity entered in April, 2005, with respect to the minor child who is the subject of this proceeding. All of the foregoing has been established by clear and convincing evidence.

Father timely filed a notice of appeal.

## II. Issues Presented

On appeal, Father presents the following issues, as we perceive them, for review:

1. Whether the trial court erred in terminating Father's parental rights when the court failed to make a finding regarding whether termination of parental rights was in the child's best interest.
2. Whether the trial court erred in relying on an oral "report and recommendation" of a guardian ad litem in finding that Father abandoned the child.
3. Whether the trial court erred in finding clear and convincing evidence of willful abandonment.
4. Whether Father should be awarded attorney's fees on appeal.

For the following reasons, we vacate the order of the chancery court and remand for further proceedings. In addition, we decline to award attorney's fees on appeal.

## III. Standards for Reviewing Termination Cases

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). Although the parent's right is fundamental and superior to the claims of other persons and the government, it is not absolute. *Id.* A parent's right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *Id.*; *see also In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In Tennessee, proceedings to terminate a parent's parental rights are governed by statute. *In re J.C.D.*, 254 S.W.3d at 438; *In re Audrey S.*, 182 S.W.3d at 860. A court may not terminate a parent's rights to his or her children unless there is specific statutory authority to do so. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). "Parties who have standing to seek the termination of a biological parent's parental rights must prove two things." *In re Audrey S.*, 182 S.W.3d at 860; *see also In re M.J.B.*, 140 S.W.3d at 653. First, they must prove the existence of at least one of the statutory grounds for termination, which are listed in Tennessee Code Annotated section 36-1-113(g). *Id.* Second, they must prove that terminating parental rights is in the child's best interest, considering, among other things, the factors listed in Tennessee Code Annotated section 36-1-113(i). *Id.* Because no civil action carries graver consequences than a petition to sever family ties forever, a person seeking to terminate parental rights must prove both of the elements for termination by clear and convincing evidence. *Id.* at 860-61. In sum, "[t]o terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Clear and convincing evidence has been defined as evidence that "eliminates any serious or substantial

doubt concerning the correctness of the conclusion to be drawn from the evidence." *In re L.J.C.*, 124 S.W.3d 609, 619 (Tenn. Ct. App. 2003) (quoting *In the Matter of: C.D.B., S.S.B., & S.E.B.*, 37 S.W.3d 925, 927 (Tenn. Ct. App. 2000)). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re Audrey S.*, 182 S.W.3d at 861.

Because of the heightened burden of proof in parental termination cases, on appeal, we must adapt our customary standard of review as set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we review each of the trial court's specific factual findings de novo in accordance with Rule 13(d), presuming the finding to be correct unless the evidence preponderates against it. *Id.* Second, we must determine whether the facts (either as found by the trial court or as supported by the preponderance of the evidence) clearly and convincingly establish the elements required to terminate parental rights. *Id.* "As a question of law, the trial court's ruling that the facts of this case sufficiently support the termination ground of willful abandonment [is] reviewed de novo with no presumption of correctness." *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007).

## IV. DISCUSSION

### A. The Trial Court's Findings

"Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making." *In re Tiffany B.*, 228 S.W.3d 148, 156 (Tenn. Ct. App. 2007); *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re Marr*, 194 S.W.3d 490, 496 (Tenn. Ct. App. 2005); *In re Audrey S.*, 182 S.W.3d at 861. Tennessee Code Annotated section 36-1-113(k) explicitly requires trial courts hearing parental termination cases to "enter an order that makes specific findings of fact and conclusions of law." Specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. *In re Tiffany B.*, 228 S.W.3d at 156; *In re Giorgianna H.*, 205 S.W.3d at 516; *In re Marr*, 194 S.W.3d at 496; *In re Audrey S.*, 182 S.W.3d at 861. Without such findings and conclusions, appellate courts are left to wonder on what basis the trial court reached its ultimate decision. *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004).

In an ordinary civil case, when a trial court makes no findings of fact, the appellate court simply reviews the record de novo and determines where the preponderance of the evidence lies. *In re C.R.B.*, No. M2003-00345-COA-R3-JV, 2003 WL 22680911, at *4, n.10 (Tenn. Ct. App. Nov. 13, 2003) (citing *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)). In a termination case, however, "[a] trial court's failure to comply with [Tennessee Code Annotated section] 36-1-113(k) affects more than the standard of appellate review. It affects the viability of the appeal." *In re G.N.S.*, No. W2006-01437-COA-R3-PT, 2006 WL 3626322, at *6 (Tenn. Ct. App. Dec. 13, 2006) (quoting *In re C.R.B.*, 2003 WL 22680911, at *4). "A trial court's failure to comply with [Tennessee Code Annotated section] 36-1-113(k) fatally undermines the validity of a termination order." *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004). This Court cannot simply review the record de novo and determine for

ourselves where the preponderance of the evidence lies, as we would in other civil cases. *State v. C.H.K.*, 154 S.W.3d 586, 591 (Tenn. Ct. App. 2004); *see also **Adoption Place, Inc. v. Doe***, No. M2007-01214-COA-R3-PT, 2007 WL 4322014, at *6 (Tenn. Ct. App. Dec. 5, 2007) *perm. app. denied* (Tenn. Feb. 4, 2008). When a trial court has failed to comply with Tennessee Code Annotated section 36-1-113(k), "the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law." *In re Tiffany B.*, 228 S.W.3d at 156; *In re Giorgianna H.*, 205 S.W.3d at 516; *In re Marr*, 194 S.W.3d at 496; *In re Audrey S.*, 182 S.W.3d at 861. Thus, a trial court must include specific findings of fact and conclusions of law in every order terminating parental rights, whether it was requested to do so or not. *In re Tiffany B.*, 228 S.W.3d at 156.

Tennessee appellate courts strictly construe Tennessee Code Annotated section 36-1-113(k) and require meticulous compliance with its mandates. *In re M.E.I.*, No. E2004-02096-COA-R3-PT, 2005 WL 2346978, at *2-3 (Tenn. Ct. App. Sept. 26, 2005). We view the requirements regarding specific findings and conclusions "with great seriousness," not as a "trivial technicality." *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004).

The findings of fact and conclusions of law required by Tennessee Code Annotated section 36-1-113(k) must address the two necessary elements of every termination case: (1) whether one or more of the statutory grounds for termination have been established, and (2) whether terminating parental rights is in the child's best interest. *In re J.D.C.*, No. E2007-02371-COA-R3-PT, 2008 WL 1899987, at *8 (Tenn. Ct. App. Apr. 30, 2008) *perm. app. denied* (Tenn. July 28, 2008). Given the importance of establishing the permanent placement of a child who is the subject of a termination proceeding, the trial court should include findings of fact and conclusions of law with regard to each ground for termination presented. *In re G.N.S.*, 2006 WL 3626322, at *6 (citing *State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 WL 239759, at *5 (Tenn. Ct. App. Feb. 9, 2004)). However, the statutory requirement to prepare written findings of fact and conclusions of law also applies with equal force to the best interest component of parental termination cases. *In re J.D.C.*, 2008 WL 1899987, at *8; *In re G.N.S.*, 2006 WL 3626322, at *7; *In the Matter of B.L.R.*, No. W2004-02636-COA-R3-PT, 2005 WL 1842502, at *15 (Tenn. Ct. App. Aug. 4, 2005).

In this case, the trial court entered an order stating that "adoption is in the best interest of said minor child, and said adoption is hereby granted. The parental rights of [Father] . . . are terminated, the Court finding that the abandonment of the minor child . . . was willful." Simply stating that a parent has "abandoned the child" is insufficient. *L.D.N. v. R.B.W.*, No. E2005-02057-COA-R3-PT, 2006 WL 369275, at *4 (Tenn. Ct. App. Feb. 17, 2006). "[A] recitation in a final order that a parent has 'abandoned the child' is a conclusion of law, not a finding of fact." *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *4 (Tenn. Ct. App. Dec. 23, 2003). A parental termination order must set forth the findings of fact that underlie the conclusions of law. *Id.* at *5. Here, it is not clear from the trial court's order whether it found abandonment based on failure to

visit, failure to support, or both.[1] In one sentence, the order briefly mentioned these issues, stating that the court found "no logical explanation as to why [Father] has not exercised visitation with said minor child nor paid child support since April, 2005 . . . ." Perhaps more problematic is the fact that the court made absolutely no finding that *termination of Father's parental rights* was in the child's best interest. We note that the trial court did find that *adoption* was in the child's best interest, but that finding is insufficient when terminating Father's parental rights. The same situation occurred in ***L.D.N. v. R.B.W.***, No. E2005-02057-COA-R3-PT, 2006 WL 369275, at *1 (Tenn. Ct. App. Feb. 17, 2006), where grandparents had filed a petition to terminate a mother's parental rights and to adopt the grandchildren. The trial court found abandonment by failure to visit and failure to support, and it found that adoption was in the best interest of the children. ***Id.*** at *4. However, it made no finding that termination of the mother's parental rights was in the child's best interest. ***Id.*** The Court of Appeals addressed the issue as follows:

> After terminating Mother's parental rights the Trial Court did find that allowing Petitioners to adopt the children was in the children's best interest. This finding, however, is not equivalent to a finding that terminating Mother's parental rights was in the best interests of the children.

***Id.*** at *4, n.3. In addition, in this case, the trial court made no specific findings of fact regarding the child's best interest. Even stating that *termination* is in a child's "best interest," without factual findings to justify the conclusion, is insufficient. ***In the Matter of B.L.R.***, 2005 WL 1842502, at *16-17; *see also **White v. Moody***, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004) ("[The order] simply recites that 'it is in the best interest and welfare of the minor child for the Respondent's parental rights [to] be terminated and that the step-father be allowed to adopt the minor child.' Accordingly, no conclusion can be drawn other than the trial court has not complied with Tenn. Code Ann. § 36-1-113(k).")

Because of the deficiencies in the termination and adoption order, we must vacate the order and remand the case to the trial court for the preparation of written findings of fact and conclusions of law in accordance with Tennessee Code Annotated section 36-1-113(k). Specifically, the trial court should conduct the statutorily required best interest analysis and enter an order containing specific findings of fact justifying its conclusion. In addition, the order should contain detailed

---

[1] There are five alternative definitions of abandonment for purposes of terminating parental rights. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)–(v) (2005). Pursuant to the first definition, "abandonment" means that:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) *either* have willfully failed to visit *or* have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child; . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(i) (2005) (emphasis added).

findings of fact as to whether the court finds clear and convincing evidence of a statutory ground for termination.

### B. *The Guardian Ad Litem*

Next, we will address Father's contention that the trial court improperly considered an oral "report and recommendation" from the guardian ad litem regarding the termination of Father's parental rights.[2] Father relies on Tennessee Supreme Court Rule 40(f), which provides:

(f) Guardian Ad Litem to Function as Lawyer, Not As a Witness or Special Master.

(1) A guardian ad litem may not be a witness or testify in any proceeding in which he or she serves as guardian ad litem, except in those extraordinary circumstances specified by Supreme Court Rule 8, § EC 5-9, 5-10 and DR 5-101.

(2) A guardian ad litem is not a special master, and should not submit a "report and recommendations" to the court.

(3) The guardian ad litem must present the results of his or her investigation and the conclusion regarding the child's best interest in the same manner as any other lawyer presents his or her case on behalf of a client: by calling, examining and cross examining witnesses, submitting and responding to other evidence in conformance with the rules of evidence, and making oral and written arguments based on the evidence that has been or is expected to be presented.

Tennessee Supreme Court Rule 40, entitled "Guidelines for Guardians Ad Litem for Children in Juvenile Court Neglect, Abuse and Dependency Proceedings," applies to "guardians ad litem only in juvenile court neglect, abuse and dependency proceedings pursuant to T.C.A. § 37-1-149, Rules 37 of the Tennessee Rules of Juvenile Procedure, and Supreme Court Rule 13." Tenn. Sup. Ct. R. 40(a). The Rule is not intended to apply to "proceedings in other courts that involve child custody or related issues." Tenn. Sup. Ct. R. 40(a).

In any event, in this case, the guardian ad litem's actions were in full compliance with the requirements of Rule 40(f). The guardian ad litem did not testify, but he did cross-examine witnesses. Prior to trial, the guardian ad litem summarized the evidence that he expected to be presented and concluded by stating, "I think it would be my argument that clear and convincing evidence exists that grounds exist, and clear and convincing evidence [exists] that it is [in] the child's best interests that the adoption be granted." Father contends that the guardian ad litem's opening statement constituted an impermissible "report and recommendation" to the court. We disagree. Rule 40(f) specifically instructs a guardian ad litem to present the results of his

---

[2] We note that Father did not object to the guardian ad litem's statements at trial. Nevertheless, we have considered the issue he presents on appeal and find it meritless.

investigation *and the conclusion regarding the child's best interest* to the trial court by, among other things, making oral arguments based on the evidence expected to be presented.

In **Toms v. Toms**, 98 S.W.3d 140, 144 (Tenn. 2003), a divorce and custody case that originated in circuit court, the Supreme Court held that a guardian ad litem's *written* report constituted inadmissible hearsay. However, the Court went on to explain that a guardian ad litem's report can be reviewed by a trial court:

> Although a guardian ad litem's report is not admissible evidence, we hold that such a report may be reviewed by a trial court. To hold otherwise would effectively undermine the important role played by a guardian ad litem. A guardian ad litem's report is a tool to be used by the parties and the court. The report may assist the parties by: 1) alerting the parties to the identity of potential witnesses who may be interviewed; 2) highlighting the testimony, both favorable and unfavorable, that may be presented at trial; and 3) providing a third party's view of the facts of the case. In short, it assists the parties in preparing for an evidentiary hearing. The report also may assist the trial court by providing an overview of the evidence and by allowing the court to determine which of the issues are contested.

*Id.* Here, we find no error in the trial court's consideration of the guardian ad litem's opening statements.

### C. Attorney's fees on Appeal

Father requested that he be awarded attorney's fees in the event he was successful on appeal. "An award of appellate attorney's fees is a matter within this Court's sound discretion." **Chaffin v. Ellis**, 211 S.W.3d 264, 294 (Tenn. Ct. App. 2006) (citing *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). When considering a request for attorney's fees on appeal, we consider the requesting party's ability to pay such fees, his success on appeal, whether he sought the appeal in good faith, and any other equitable factors relevant in a given case. *Id.* (citing *Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005)). In this case, we find it equitable to decline to award attorney's fees on appeal.

### V. CONCLUSION

For the aforementioned reasons, we vacate the order of the chancery court and remand for preparation of an order that complies with Tennessee Code Annotated section 36-1-113(k). Further, we decline to award attorney's fees to Father. Costs of this appeal are taxed to the appellees, Mother and Stepfather, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.