# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### August 16, 2016 Session

## FEDERAL NATIONAL MORTGAGE ASSOCIATION v. ARNOLD EMMITT QUARLES, III

**Appeal from the Circuit Court for Rutherford County**
**No. 66780      Howard W. Wilson, Chancellor**

_____

**No. M2015-01620-COA-R3-CV-Filed September 30, 2016**

_____

A borrower on a promissory note secured by his home became delinquent in his payments and the bank foreclosed and filed a successful unlawful detainer action in general sessions court. The borrower filed a petition for writ of certiorari and supersedeas in circuit court asserting wrongful foreclosure; he also filed a countercomplaint seeking declaratory relief and alleging causes of action for unjust enrichment and wrongful disclosure against the bank. Three defendants filed a motion for summary judgment, and the trial court granted the motion. The borrower filed a motion for permission to file an amended countercomplaint asserting causes of action for fraud and breach of contract against the bank, and the trial court granted the motion. The trial court further granted the defendants' motion for summary judgment and certified the order as a final judgment pursuant to Tenn. R. Civ. P. 54.02. Because we have determined that the trial court erred in certifying the judgment as final under Tenn. R. Civ. P. 54.02, we vacate the trial court's order and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

John Frank Higgins, Nashville, Tennessee, for the appellant, Arnold Emmitt Quarles, III.

Edmund S. Sauer and Jeffrey W. Sheehan, Nashville, Tennessee, for the appellees, Federal National Mortgage Association, Bank of America, N.A., and Mortgage Electronic Registration Systems, Inc.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

Arnold Quarles executed a note in the amount of $228,000.00 payable to America's Wholesale Lender ("AWL") on January 11, 2007. The loan was secured by a deed of trust on Mr. Quarles's home at 601 High Ridge Drive in Smyrna, Tennessee. According to the affidavit of Bank of America ("BOA") representative Susan Magaddino, discussed below, "America's Wholesale Lender" was a trade name for Countrywide Home Loans, Inc. ("Countrywide"). Countrywide made an in-blank endorsement on the note, signed by an executive vice-president; and a Countrywide servicing affiliate, Countrywide Home Loans Servicing L.P. ("Countrywide Servicing"), began servicing the note. Countrywide Servicing changed its name to BAC Home Loans Servicing L.P in April 2009, and merged with BOA in July 2011.

Mr. Quarles stopped making payments on the note in August 2011. BOA instituted foreclosure proceedings on behalf of the Federal National Mortgage Association ("Fannie Mae"), the owner of the note, and Fannie Mae purchased the property at a foreclosure auction. Fannie Mae filed a detainer action against Mr. Quarles in general sessions court in Rutherford County on June 3, 2013, and the court entered judgment in favor of Fannie Mae on July 12, 2013.

Mr. Quarles did not appeal the detainer judgment. He opted, instead, to file a petition for writ of certiorari and supersedeas in circuit court pursuant to Tenn. Code Ann. § 29-18-129 against Fannie Mae. The circuit court granted the writ and entered a fiat requiring Mr. Quarles to post a bond. The fiat provides, in pertinent part, as follows:

> Petitioner will be required to pay $1,644.04 each month [amount of mortgage payments] to the Circuit Court Clerk starting August 3rd, 2013. . . . Should the Petitioner fail to make the August 3rd, 2013 payment, Respondent will have the right to possession of said property.
>
> Execution on the judgment entered in the General Sessions Court for Rutherford County . . . will be stayed until further orders of the Court.[1]

Once the circuit court had granted the writ, Mr. Quarles filed an answer to Fannie Mae's detainer warrant as well as a countercomplaint against Fannie Mae, BOA, Mortgage Electronic Registration Systems, Inc. ("MERS"), AWL, and DOES 1-10 for declaratory relief to determine which, if any, of the defendants had a legal or equitable right in the note or deed of trust; unjust enrichment (against BOA only); and wrongful

---

[1] Mr. Quarles requested a month-to-month payment structure in his petition. He has not made any payments since October 2014, when he made a lump sum payment to satisfy a delinquency.

foreclosure (against BOA only).

On January 21, 2015, Fannie Mae, BOA, and MERS filed a motion for summary judgment, and Countrywide joined the motion. In support of their motion, these defendants filed the affidavit of Susan Magaddino, Operations Team Manager of BOA. Ms. Magaddino testified, in pertinent part:

> The Note [reflecting the loan to Mr. Quarles] was endorsed in blank by Countrywide Home Loans, Inc., a New York Corporation, doing business as America's Wholesale Lender. Thereafter, servicing of the loan was by Countrywide Home Loans Servicing L.P.

> Effective April 21, 2009, Countrywide Home Loans Servicing L.P. amended its certificate of limited partnership to change its name to BAC Home Loans Servicing, L.P. Subsequently, effective July 1, 2011, BAC Home Loans Servicing L.P merged with Bank of America ("BANA"). BANA is successor by merger to BAC Home Loans Servicing L.P.

> At all times relevant, BANA was the holder of the Note [and] servicer of the loan.

> The bank's records reflect that the investor in this loan is Federal National Mortgage Association ("FNMA"). . . .
> . . . .
> On May 9, 2013, the foreclosure sale occurred. BANA submitted the high bid. A copy of the Trustee's deed reflecting that BANA submitted the highest bid in the amount of $229,534.89 and that BANA had assigned its bid to Federal National Mortgage Association is attached as Exhibit O.

> The last payment Quarles made on the loan was the payment in February 2012. At the time of the foreclosure, the balance on the Note, including principal, accrued interest and negative escrow balance and foreclosure expenses was $229,534.89.

> As a result of the foreclosure sale, FNMA is the owner of the property.

> Quarles has made no payment for approximately three years but has continued to live in the property and deprive FNMA of possession of the property.

Mr. Quarles filed a motion for leave to file an amended countercomplaint in order to add two claims: fraud and breach of contract. He subsequently filed a response to the defendants' motion for summary judgment and his own supporting affidavit in which he

testified, in pertinent part:

> From January 2007 through July 2011 I made all of my payments on time.
>
> In July of 2011, I was contact[ed] by a representative from Bank of America. I was offered a loan modification—I did not seek one out. I was specifically told that to [sic] stop making payments. I was told that I would not be responsible for making payments during the time [this] loan modification paperwork was being processed. I had been making payments to BOA prior to this phone call.
>
> I was specifically instructed that after I made payment for the month of July, to stop making payments as a prerequisite to qualify for a loan modification. I did as I was instructed to do.
>
> After several months had elapsed, I became nervous and called Bank of America to see what the status of this process was and was not given any answers.
>
> I was forced to resubmit paperwork, I spoke to several different representatives, endured long wait times on hold. Because of the run around I was given, I contacted and wrote letters to the Tennessee Housing Development, Department of Financial Institutions, the Comptroller of the Currency, Governor [Haslam], and the Representative Office of the Honorable Rick Womack.
>
> During the time BOA stated that they [trying to] determine my eligibility for reduced payments, they filed [a] purported "Assignment of Deed of Trust" . . . and a "Substitution of Trustee" . . . . Neither document lists Fannie Mae as the owner of my loan.
>
> After I filed several administrative complaints as listed above. [sic] After lodging the complaints, Bank of America sent me a reinstatement calculation bill for $13,812.83 which included, inter alia, late fees, foreclosure attorney's fees, foreclosure expenses . . . . I was informed that BOA would only accept a Cashier's Check or Money Order.
>
> On February 17th, 2012 I sent a letter stating what had happened to me and remitted a Certified Check for $13,812.83 with the expectation that my loan would be reinstated if BOA cashed my certified check . . . .
>
> The letter that was provided to the Court . . . has been altered, appears to have been photocopied, and does not contain the entire contents of my

letter which stated what I had endured.

On February 17th, 2012 I remitted $13,812.83 which reflected, in part, payments for the time I was instructed not to pay. BOA cashed the check. The reinstatement quote I was given reflected that I was making seven monthly payments—spanning from August through February.
. . . .
The following month I was informed by BOA that I owed $3,215.06 on my mortgage payments . . . . I was not given a breakdown of the costs and did not agree to the terms and did not make a payment as that I did not accept their offer.
. . . .
We were never able to reestablish a contract together as <u>BOA and I never agreed on a price, which is a material term to performance of any contract.</u>

In an order filed on April 9, 2015,[2] the trial court granted Mr. Quarles's motion to amend his countercomplaint.

<u>Decision of trial court</u>

On April 9, 2015, the trial court entered an order granting the defendants' motion for summary judgment. The trial court made the following findings of fact:

1. On January 11, 2007, Quarles executed a note to America's Wholesale Lender in the original principal sum of $228,000 (the "Note") to evidence a loan to refinance an existing loan upon the Property. To secure the loan, Quarles executed a deed of trust that was a first lien on the Property.
2. The exhibits show that Countrywide Home Loans, Inc.,[3] d/b/a America's Wholesale Lender, endorsed the Note in blank. Thereafter, the loan was serviced by Countrywide Home Loans Servicing LP.
3. Countrywide Home Loans Servicing, LP changed its name to BAC Home Loan Servicing, LP that on July 1, 2011, merged into Bank of America, N.A. Accordingly, at that time BANA became the holder of the Note and servicer of the loan.
4. Quarles defaulted on the Note. The evidence reflects various demands on Quarles to pay the Note and attempts to modify the loan to reduce

---

[2] This order was entered by the judge on March 17, 2015.

[3] The order originally referenced "Countrywide Home Loan Servicing, Inc." as the endorser of the loan, but this was corrected and changed to "Countrywide Home Loans, Inc." pursuant to the amended order entered on July 13, 2015.

payments, but Quarles failed to bring the payments up to date and the loan balance was accelerated. As a result of the default, BANA instructed the substitute trustee to foreclose on the Property.

5. A foreclosure sale occurred on May 9, 2013. BANA bid at the sale and assigned its bid to Fannie Mae.

6. The substitute trustee's deed was executed and conveys title to the Property to Federal National Mortgage Association. The substitute trustee's deed is of record in Book 1220, page 2751, RORC. As such, Fannie Mae was entitled to bring the unlawful detainer action filed in General Sessions Court.

The trial court then proceeded to make the following conclusions of law:

1. The Court concludes that at all times relevant, BANA was the holder of the Note and servicer of the loan. As such, BANA was entitled to receive payments on the Note and in the event of default was entitled to enforce the terms of the deed of trust.

2. As to Count 1 of the counterclaim, the Court concludes that BANA was entitled to receive payments on the Note and when Quarles defaulted, BANA, as holder of the Note and servicer of the loan, was entitled [to] enforce the terms of the Note, accelerate payments, and to enforce the deed of trust by causing the substitute trustee to foreclose upon the Property.

3. Because BANA was the holder of the Note and servicer of the loan, its acceptance of payments did not result in an unjust enrichment as alleged in Count II of the counterclaim. Quarles was obligated under the Note to pay the holder. His doing [so] cannot be said to support a claim for unjust enrichment against BANA because BANA, as holder of the Note and servicer of the loan was entitled to those payments.

4. The wrongful foreclosure claim as alleged in Count III also fails. BANA, as holder of the Note and servicer of the loan, was entitled to receive the payments and enforce the provisions of the loan documents, and upon Quarles' default was entitled to direct the substitute trustee to foreclose. There is no valid assertion of any impropriety in the sale. Quarles' argument that Fannie Mae should be shown as an interested party under TCA § 35-5-104 is misplaced as is his assertion that TCA § 35-5-117(f)(1) applies. That statute was repealed on January 1, 2013 and the foreclosure sale occurred on May 9, 2013. The Court finds that the foreclosure was not wrongful.

5. The Court finds that the summary judgment evidence negates all claims asserted by Quarles in defense of the detainer action and in the counterclaims addressed by the motion. Accordingly, the Court finds that summary judgment is appropriate on the counterclaim and the three

counts addressed above.

The trial court noted that Mr. Quarles's proposed amended countercomplaint remained to be filed and, therefore, the order granting the defendants' motion for summary judgment "does not completely dismiss all claims against all parties." The court went on to state: "However, pursuant to Rule 54.02, Tenn. R. Civ. P., the Court determines that there is no just reason for delay and expressly directs that this judgment should be a final judgment herein on the matters resolved."

Mr. Quarles filed a motion to alter or amend the order granting summary judgment. In an order entered on July 30, 2015, the trial court denied Mr. Quarles's motion to alter or amend with the exception of a minor correction made in an amended order granting summary judgment entered on July 13, 2015.

Mr. Quarles filed a timely notice of appeal on August 13, 2015. He filed his amended countercomplaint on September 1, 2015.

Issues raised on appeal

Mr. Quarles asserts that the trial court erred in granting summary judgment on his countercomplaint and in not allowing a trial to proceed on the merits of Fannie Mae's claim in light of Mr. Quarles's defenses and counterclaims. The issues presented as part of this argument are (1) whether BOA had authority to foreclose on Mr. Quarles's loan; and (2) whether BOA was required to comply with the debtor notice provisions set forth in Tenn. Code Ann. § 35-5-117.[4] The appellees, Fannie Mae, BOA, and MERS, raise the following issue: whether Mr. Quarles's continuing failure to pay the bond required pursuant to Tenn. Code Ann. § 29-18-129 deprives this Court of subject matter jurisdiction.

ANALYSIS

Rule 54.02

We begin by addressing an issue not raised by either party—whether the trial court properly certified the order as final under Tenn. R. Civ. P. 54.02.

Tennessee Rule of Appellate Procedure 13(b) requires appellate courts to "consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review." *See also Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003) ("Appellate courts must address the issue of subject matter jurisdiction even if the issue is not raised in the trial court."). The concept of subject matter jurisdiction involves

---

[4] This statute was repealed effective January 1, 2013. 2011 TENN. PUB. ACTS ch. 122 § 4.

a court's power to adjudicate a case. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). Subject matter jurisdiction must be conferred by statute or by the Tennessee Constitution; "the parties cannot confer it by appearance, plea, consent, silence, or waiver." *Johnson v. Hopkins*, 432 S.W.3d 840, 843-44 (Tenn. 2013). The absence of "subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing TENN. R. CIV. P. 12.08).

Under Tenn. R. App. P. 3(a), "every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right." Except as permitted by Tenn. R. App. P. 9 or Tenn. R. Civ. P. 54.02, "if multiple parties or multiple claims for relief are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable . . . ." TENN. R. APP. P. 3(a). In this case, the asserted basis for appellate jurisdiction is Tenn. R. Civ. P. 54.02.

Tennessee Rule of Civil Procedure 54.02 provides, in pertinent part, as follows:

> When more than one claim for relief is present in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the Court, whether at law or in equity, may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Because Tenn. R. Civ. P. 54.02 and Fed. R. Civ. P. 54(b) are "substantially identical," Tennessee courts look to federal authority in construing Rule 54.02. *Brown v. John Roebuck & Assocs., Inc.*, No. M2008-02619-COA-R3-CV, 2009 WL 4878621, at *5 (Tenn. Ct. App. Dec. 16, 2009) (citing *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557 (Tenn. 1990)). This court has stated that "[t]he purpose of the [Rule 54.02] certification rule is to enhance judicial economy and 'to prevent piecemeal appeals in cases which should be reviewed only as single units.'" *Cates v. White*, No. 03A01-9104CH00130, 1991 WL 168620, at *3 (Tenn. Ct. App. Sept. 4, 1991) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).

Under Tenn. R. Civ. P. 54.02, there are two prerequisites to the certification of a final judgment: "(1) the order must eliminate one or more but fewer than all of the claims or parties, and (2) the order must expressly direct the entry of final judgment upon an express finding of 'no just reason for delay.'" *Carr v. Valinezhad*, No. M2009-00634-COA-R3-CV, 2010 WL 1633467, at *2 (Tenn. Ct. App. Apr. 22, 2010) (citations omitted). Like the federal courts, we apply a dual standard of review in determining the propriety of a trial court's Tenn. R. Civ. P. 54.02 certification. *Brown*, 2009 WL 4878621, at *5 (citing *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1027 (6th

Cir. 1994)); *see also King v. Kelly*, No. M2015-02376-COA-R3-CV, 2016 WL 3632761, at *3 (Tenn. Ct. App. June 28, 2016). Under this dual standard, "[t]he determination that a particular order ultimately disposes of a separable claim is a question of law reviewed *de novo*, while the finding of no just reason for delay is only reviewed for an abuse of discretion." *GenCorp.*, 23 F.3d at 1027.

To be certifiable as final pursuant to Tenn. R. Civ. P. 54.02, an order must "dispose of at least one entire claim, or resolve all of the claims against at least one party." *Konvalinka v. Am. Int'l Grp., Inc.*, No. E2011-00896-COA-R3-CV, 2012 WL 1080820, at *3 (Tenn. Ct. App. Mar. 30, 2012); *see also Cates*, 1991 WL 168620, at *3. For purposes of Tenn. R. Civ. P. 54.02, a "claim" has been defined as "'the aggregate of operative facts which give rise to a right enforceable in the courts.'" *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978) (quoting *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 341 (2d Cir. 1963)); *see also Tucker v. Capitol Records, Inc.*, No. M2000-01765-COA-R3-CV, 2001 WL 1013085, at *8 (Tenn. Ct. App. Sept. 6, 2001). This court has further stated that "separate causes of actions or counts in a complaint that arise out of the same series of closely related factual occurrences constitute one claim for the purposes of Rule 54.02." *Carr*, 2010 WL 1633467, at *3 (citing *Brown*, 2009 WL 4878621, at *7).

Applying these principles to the present case, we conclude that the trial court's order granting the defendants' motion for summary judgment did not dispose of a claim. All of the causes of action asserted by Mr. Quarles and the defendants arise out of the same set of facts: the bank's foreclosure on Mr. Quarles's home and his attempts to prevent the bank from taking possession of the property. Mr. Quarles's amended countercomplaint asserts causes of action for fraud and breach of contract. The countercomplaint includes the same operative facts as set forth in his original countercomplaint and alleges, *inter alia*, that BOA fraudulently induced him to become delinquent on his mortgage and made fraudulent misrepresentations that it would reinstate his loan. The amended countercomplaint also states that BOA breached its duty of good faith and fair dealing in its contract with Mr. Quarles. These causes of action for fraud and breach of contract remain pending in the trial court, and they arise out of the same set of facts as those upon which the trial court granted summary judgment. Therefore, the order did not dispose of one claim.

The other ground for certification of an order as a final judgment under Tenn. R. Civ. P. 54.02 is that the order "resolve[d] all of the claims against at least one party." *Konvalinka*, 2012 WL 1080820, at *3. Although Mr. Quarles named all of the defendants in his amended countercomplaint, the two causes of actions asserted therein make allegations concerning BOA and Fannie Mae, on whose behalf BOA was allegedly acting. In his prayer for relief, Mr. Quarles seeks punitive damages against BOA and/or Fannie Mae, other damages caused by the conduct of the defendants, and the setting aside of the foreclosure sale. Because the amended countercomplaint does not expressly

mention MERS, it could be argued that the trial court's order granting summary judgment resolved all claims against MERS.[5]

Even if we assume that the trial court's order resolved all claims against one or more but fewer than all of the parties, we conclude that the trial court's decision to certify the order as final pursuant to Tenn. R. Civ. P. 54.02 was erroneous. Although trial courts have considerable discretion in making the determination that there is no just reason to delay appellate review, such a determination is subject to reversal if the court "fails to 'weigh and examine the competing factors involved in the certificat[ion] decision.'" *GenCorp.*, 23 F.3d at 1030 (quoting *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 61-62 (6th Cir. 1986)). The Sixth Circuit has set out a list of factors to be considered when making this determination:

> "(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense and the like."

*Id.* (quoting *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir. 1986)). This court has adopted these same factors. *Newell v. Exit/In, Inc.*, No. M2003-00434-COA-R3-CV, 2004 WL 746747, at *2 (Tenn. Ct. App. Apr. 7, 2004); *Cates*, 1991 WL 168620, at *3.

In its order, the trial court gave no justification for its determination that there was "no just reason for delay." The factors listed above weigh against allowing a separate appeal of the summary judgment order. As discussed above, the adjudicated and unadjudicated claims arise out of the same facts, and the possibility exists that "this court would be faced with duplicative appeals based upon the same facts." *Brown*, 2009 WL 4878621, at *8. The counterclaims that remain pending in the trial court may result in damages for Mr. Quarles, and he requests that the foreclosure sale be set aside. Thus, if successful, these counterclaims would affect the judgment embodied in the trial court's order granting the defendants summary judgment.

CONCLUSION

The trial court's order certifying the judgment as final under Tenn. R. Civ. P.

---

[5] There are no other parties involved in this appeal.

54.02 is vacated, and the case is remanded for further proceedings. Costs of the appeal are assessed half against the appellant and half against the appellees, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE