# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
## HEARD AT MEMPHIS
### November 13, 2002 Session

## JESSICA DIANE TOMS v. JAMES ANTHONY TOMS, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Shelby County**
**No. CT000085-00, Div. 9     James F. Russell, Judge**

---

**No. W2002-02245-SC-R10-CV - Filed January 7, 2003**

---

This case is before the Court on an interlocutory appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.[1]  In this extraordinary appeal, Appellant asserts that the trial court erred in granting temporary custody of her two children to their paternal grandparents during the pendency of the underlying divorce action.  Specifically, she claims that the trial court erred in failing to conduct an evidentiary hearing and in considering only the guardian ad litem's reports in making its custody determination.  Having carefully reviewed the issues raised by the parties, we hold that the trial court erred in basing its decision to change custody solely upon the guardian ad litem's reports.  Accordingly, we reverse the judgment of the trial court awarding custody to the grandparents and remand the case for proceedings consistent with this opinion.

**Tenn. R. App. P. 10 Appeal by Permission; Judgment of the Trial Court Reversed;**
**Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

William T. Winchester, Memphis, Tennessee, for the appellant, Jessica Diane Toms.

Wendy S. Dabbous, Memphis, Tennessee, for the appellee, James Anthony Toms.

William M. Monroe, Memphis, Tennessee, for the intervenors-appellees, Gerald Williams and Robin Williams.

---

[1] This Court may grant an interlocutory appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure when a lower court "so far depart[s] from the accepted and usual course of judicial proceedings as to require immediate review."

Barbaralette G. Davis, Christina A. Zawisza, Nancy Percer Kessler, and Webb A. Brewer, Memphis, Tennessee, for the amicus curiae, Memphis Area Legal Services, Inc.

Marc E. Reisman, Memphis, Tennessee, for the guardian ad litem, Susan A. Hinsley.

## OPINION

### Factual Background

On February 4, 2000, Robin Williams ("Grandmother") filed a dependency and neglect petition in the Juvenile Court of Memphis and Shelby County. In her petition, Grandmother asserted that her eight-month-old grandson, Chase Anthony Toms ("Chase"), was in need of the protection and assistance of the Court because he was without proper guardianship. Specifically, Grandmother claimed that her daughter-in-law, Jessica Diane Toms ("Mother"), failed to provide adequate care and a stable home for Chase.

On February 8, 2000, Mother filed a complaint for divorce from her husband, James Anthony Toms ("Father"), in the Circuit Court of Shelby County. In her complaint, Mother sought custody of Chase. Six days later, Grandmother and her husband ("Grandparents") filed a motion to intervene. Grandparents alleged that neither Mother nor Father was fit to have custody of Chase. By its order dated February 25, 2000, the circuit court appointed Susan A. Hinsley as guardian ad litem for Chase. On March 9, 2000, the juvenile court referee dismissed without prejudice Grandmother's dependency and neglect action for failure to prosecute the petition. The circuit court granted Grandparents' motion to intervene on March 14, 2000.

Grandparents filed a complaint on March 31, 2000, seeking custody of Chase. In their complaint, they alleged that Chase was not properly cared for while in the custody of Mother. In support of their petition, they claimed that: 1) Chase was frequently sick as a result of being exposed to numerous cats, ferrets, and reptiles as well as to cigarette smoke; 2) Mother had received psychological treatment at two treatment facilities and had been hospitalized in a psychiatric unit as a result of a suicide attempt; and 3) Father had been noncompliant as to his medication for bipolar disorder and had failed to show a consistent pattern of stable behavior during Chase's lifetime.[2]

The guardian ad litem conducted an investigation and filed an interim report on May 2, 2000. The investigation revealed that Chase had spent a significant part of his life in the care of Grandparents. She recommended that Grandparents babysit Chase while Mother is working and that a specific visitation schedule be implemented to give Chase needed stability and an opportunity to bond with both parents. She also recommended that Mother limit Chase's exposure to animals and cigarette smoke.

---

[2] In his response to Grandparents' petition for immediate change of temporary custody, Father admitted that these allegations were true and correct.

Thereafter, the parties attempted to reconcile. A second child, Christopher Taylor Toms ("Christopher"), was born on April 29, 2002. However, on August 1, 2002, Mother filed an amended complaint for divorce. Grandparents again intervened. By its order dated August 12, 2002, the trial court set a hearing for November 13, 2002.

In a letter dated August 30, 2002, Grandparents informed Mother of their intent to file a petition for immediate change of temporary custody and to request a second judge for an immediate hearing.[3] They filed their petition on September 3, 2002, reasserting the facts contained in their March 31, 2000 complaint. The petition also alleged that Chase and Christopher were not receiving proper medical attention. Grandparents reported that Mother failed to seek medical treatment for infections Christopher had developed in his eyes and ears and failed to seek dental treatment for Chase. They further alleged that Mother left Chase and Christopher alone with people of questionable reputation to whom she was not related. Mother did not respond to Grandparents' petition. Judge James F. Russell, sitting by interchange, entered an order on September 11, 2002, setting the petition to be heard on September 13, 2002. Judge Russell also reappointed Susan A. Hinsley as guardian ad litem for both Chase and Christopher.

On the day of the hearing, the guardian ad litem presented a written report to Judge Russell and to the parties. Mother's counsel objected to the admission of any written report by the guardian as hearsay.[4] Judge Russell overruled the objection. No other proof was taken.

After reviewing the guardian's new report as well as the guardian's interim report filed in May 2000, Judge Russell held that a change in custody was in the children's best interests. Judge Russell ordered that the guardian's reports be filed under seal. He instructed the parties to present to the court a temporary parenting plan that incorporated the recommendations of the guardian. He ordered that any dispute regarding the temporary parenting plan be presented to the guardian, who would act as the final arbiter of the terms and conditions of the parenting plan. Finally, he ordered the immediate transfer of Chase and Christopher to Grandparents and enjoined the parties from interfering with their orderly and peaceful transfer.

On September 18, 2002, Mother filed an application for extraordinary appeal to the Tennessee Court of Appeals pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.

---

[3] The judge to which the case was assigned was on vacation.

[4] On appeal, Appellant has also asserted the following additional issues: 1) that the trial court denied her due process when it awarded temporary custody of her two children to the paternal grandparents; 2) that Grandparents lacked standing to intervene in the pending divorce action between Appellant and Appellee; 3) that Grandparents' petition for immediate change of temporary custody failed to state a claim upon which relief could be granted; and 4) that the trial court improperly delegated its authority to the guardian ad litem by basing its custody determination solely on the guardian's reports and by designating the guardian as the final arbiter on issues of visitation. As these issues were not raised in the trial court, we decline to address them on appeal. See In re Adoption of Female Child, 42 S.W.3d 26, 31-32 (Tenn. 2001).

The Court of Appeals denied the application on October 7, 2002. Mother then filed an application for extraordinary appeal in this Court. We granted the appeal.

**Analysis**

I. Subject Matter Jurisdiction

Subject matter jurisdiction involves a court's power to adjudicate a particular controversy brought before it. See Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000). Appellate courts must address the issue of subject matter jurisdiction even if the issue is not raised in the trial court. See First Am. Trust Co. v. Franklin-Murray Dev. Co., L.P., 59 S.W.3d 135, 140-41 (Tenn. Ct. App. 2001) (citing Manning v. Feidelson, 136 S.W.2d 510, 510-11 (Tenn. 1940)). Accordingly, we will address Mother's claim that the trial court lacked subject matter jurisdiction to consider Grandparents' request for custody even though this issue was first raised on appeal.

Mother contends that Tennessee Code Annotated section 37-1-103(a) grants exclusive original jurisdiction to the juvenile court over dependency and neglect proceedings. Because Grandparents first filed their allegations concerning Mother's lack of fitness in the juvenile court, Mother asserts that the juvenile court has exclusive jurisdiction to decide this issue. We disagree. We conclude that the juvenile court lost jurisdiction of the case upon the dismissal of the dependency and neglect petition on March 9, 2000.

Tennessee Code Annotated section 37-1-103(c) provides that when a juvenile court acquires jurisdiction of a dependency and neglect petition, "such jurisdiction shall continue until the case has been dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction . . . ." The juvenile court dismissed Grandmother's petition on March 9, 2000, at which time it lost jurisdiction. At that time, the circuit court, which had jurisdiction over the pending divorce action, properly acquired jurisdiction over Grandparents' petition for immediate change of temporary custody.

II. Guardian Ad Litem Reports

Mother claims that the trial court erred in granting custody to Grandparents without an evidentiary hearing and in reliance upon the written reports of the guardian ad litem. We conclude that the guardian ad litem's reports were hearsay and that the trial court erred in relying upon the reports as the basis for its custody determination.

Under the Tennessee Rules of Evidence, "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801. A guardian ad litem's report constitutes hearsay under this definition. The report is an out-of-court statement made by the guardian ad litem that normally will be introduced for the truth of the statements contained in it. In this case, counsel objected to the hearsay nature of the written reports. We hold that the objection should have been sustained.

-4-

In lieu of the introduction of the written report, a guardian ad litem should testify at the trial or hearing and be subject to cross-examination. Not all of a guardian's interviews and observations will be admissible. To be admissible, evidence must conform to the Tennessee Rules of Evidence. If the evidence is hearsay, it will not be admissible unless it falls within an exception to the hearsay rule. See Tenn. R. Evid. 802. For example, a guardian may testify concerning any admissions made by the parties. See Tenn. R. Evid. 803. However, a guardian may not testify as to statements made by witnesses who were interviewed in the course of the guardian's investigation, unless the statement does not meet the definition of hearsay or a hearsay exception governs the testimony. If the substance of a non-party witness' statements are sought to be introduced as evidence and those statements constitute hearsay, the witness must testify at trial.

Although a guardian ad litem's report is not admissible evidence, we hold that such a report may be reviewed by a trial court. To hold otherwise would effectively undermine the important role played by a guardian ad litem. A guardian ad litem's report is a tool to be used by the parties and the court. The report may assist the parties by: 1) alerting the parties to the identity of potential witnesses who may be interviewed; 2) highlighting the testimony, both favorable and unfavorable, that may be presented at trial; and 3) providing a third party's view of the facts of the case. In short, it assists the parties in preparing for an evidentiary hearing. The report also may assist the trial court by providing an overview of the evidence and by allowing the court to determine which of the issues are contested.

At least one other jurisdiction supports a view similar to the one we adopt in this case. In Jorgensen v. Jorgensen, 231 N.W.2d 360, 363 (Neb. 1975), the Supreme Court of Nebraska reversed a lower court's custody determination that was based on the report of a guardian ad litem rather than on the evidence in the record. The court stated that earlier cases had found that such reports are not evidence. See id. (citing Dier v. Dier, 4 N.W.2d 731 (Neb. 1942)). Due process required that witnesses, including a guardian ad litem, be subject to cross-examination. See id. In the present case, the trial court considered the guardian ad litem's reports as evidence. No other evidence was presented, and the report was the sole basis for the court's decision to grant Grandparents' petition for immediate change of temporary custody. Because no admissible evidence was presented at the hearing, the trial court had no basis upon which to find a threat of substantial harm to the children's welfare.[5] We conclude that the court's exclusive reliance on the reports of the guardian ad litem in granting Grandparents' petition for immediate change of temporary custody was inappropriate.

---

[5] In a contest between a parent and a non-parent, a parent cannot be deprived of the care and custody of a child unless there has been a finding of substantial harm to the child. See Bond v. McKenzie (In re Adoption of Female Child), 896 S.W.2d 546, 548 (Tenn. 1995). Due process requires that a non-parent seeking custody of a child must show substantial harm by clear and convincing evidence. See Hall v. Bookout, 87 S.W.3d 80, 86 (Tenn. Ct. App. 2002); Stokes v. Arnold, 27 S.W.3d 516, 520 (Tenn. Ct. App. 2000). Only after this showing is made may a court engage in a general "best interest of the child" evaluation in making a determination of custody. See Bond, 896 S.W.2d at 548.

### III. Attorney's Fees

Mother seeks attorney's fees from Grandparents under Tennessee Code Annotated section 36-5-103(c). This section provides that

> the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred . . . in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing . . . .

Tenn. Code Ann. § 36-5-103(c) (2001). From this language, it is clear that the <u>spouse</u> to whom custody is awarded may recover attorney's fees from the other <u>spouse</u>. It is also clear that a third person to whom custody is awarded may recover attorney's fees. In this case, however, the spouse having custody is seeking to recover attorney's fees from a third party intervenor seeking custody. We conclude that the statutory language supports such an award of attorney's fees.

Grandparents were made parties to the divorce action as a result of their request to intervene. The trial court awarded Grandparents temporary custody of the children. Had Grandparents prevailed in this Court, they would have been entitled to recover attorney's fees from Mother, Father, or both under Tennessee Code Annotated section 36-5-103(c). <u>See</u> <u>D v. K</u>, 917 S.W.2d 682, 686 (Tenn. Ct. App. 1995) (construing Tennessee Code Annotated section 36-5-103(c) to allow for fees on appeal). We conclude that parties to whom attorney's fees may be awarded pursuant to this statute may also have attorney's fees awarded against them when their petition is unsuccessful.

### Conclusion

We hold that the trial court erred in relying upon the reports of the guardian ad litem as its sole basis for granting Grandparents' petition for immediate change of temporary custody. Therefore, we reverse the trial court's award of temporary custody to Grandparents. The case is remanded to the trial court for proceedings consistent with this opinion and for an assessment of attorney's fees. Costs on appeal are taxed to Grandparents, Robin Williams and Gerald Williams, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE