IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 7, 2017 Session

## IN RE CALEB F. ET AL.

**Appeal from the Juvenile Court for Montgomery County**
**No. 14-JV-794, 14-JV-795        Timothy K. Barnes, Judge**

_____

**No. M2016-01584-COA-R3-JV**

_____

Shortly after entry of an agreed permanent parenting plan, Father filed a petition to find Mother in contempt and to modify the parenting plan. The petition alleged that a material change in circumstance had occurred since the adoption of the agreed plan, such as Mother allegedly interfering with Father's parenting time. The juvenile court found a material change in circumstance had occurred and modified the parenting plan by increasing Father's parenting time. From this ruling, Father appealed, claiming that the court erred by not granting him equal parenting time. Because the court's order modifying the plan contains insufficient findings of fact and conclusions of law, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY B. BENNETT and RICHARD H. DINKINS, JJ., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Bryan F.

Mark R. Olson and Taylor R. Dahl, Clarksville, Tennessee, for the appellee, Kera S.

## OPINION

### I.

On December 18, 2014, Bryan F. ("Father") filed a petition in the Juvenile Court for Montgomery County, Tennessee, for civil contempt against Kera S. ("Mother") and for modification of permanent parenting plan. The plan, which had been approved by an

October 8, 2014 order, addressed the parties' two children: Caleb F., born in May 2007, and Jack F., born in February 2009 (together, the "children"). According to the order approving the plan, the parties had "reached a substantial agreement with regard to the terms of the [plan]." The plan designated Mother as the primary residential parent and awarded her 295 days of parenting time each year, while Father received 70 days.

In his modification petition, Father alleged that Mother had "willfully violated the Court's Order and plan as follows":

a. By denying the Father his allotted parenting time;
b. By denying the Father the ability to communicate with the children by phone or other means;
c. By demeaning the Father to the children and instructing them to lie to him[;]
d. By harassing the Father to his Army superiors about child support despite his compliance with the Court's Order;
e. By failing or refusing to inform Father of medical emergencies of children;
f. Mother is intentionally scheduling events and appointments for children on Father's days of visitation.

Based on these allegations, Father asserted that a material change in circumstance warranted a modification of the parties' agreed parenting plan. Father sought, among other things, "more time with the children" and a "recalculat[ion of] any award of child support arrearages based upon any re-calculated child support figures resulting from this petition."

Mother filed a response, generally denying all material allegations in Father's petition. She counter-petitioned for civil and criminal contempt, alleging that Father abused the children and requesting that Father's parenting time be supervised.[1]

A.

The juvenile court held a trial over three days in August and November of 2015 and in January of 2016. The first day of the trial focused primarily, not on the allegations of Father's petition, but on a concern identified by the children's guardian ad litem. Calling the case "the strangest" he had ever seen, the GAL stated he had "grave concerns" for the children. In opening statements, the GAL asserted that the children

---

[1] The day following the filing of the petition for modification, the Kentucky Cabinet for Health and Family Services received a report of suspected child abuse or neglect involving Father and his then girlfriend. The court suspended Father's parenting time as a result. Following an investigation, the Cabinet for Health and Family Services found the allegations to be "unsubstantiated," and the court permitted Father to resume his parenting time.

2

acted "vastly different" in Mother's care as opposed to Father's care. In Mother's care, the children were "very much out of control," but with Father, the children acted "like appropriate children." With respect to Caleb, who had been diagnosed with autism, specifically, the GAL questioned "whether the conditions for which Caleb ha[d] been diagnosed truly exist[]." The GAL could not understand how "someone with autism c[ould] turn that off depending on which parent they [we]re with."[2]

The testimony during the first day of trial largely corroborated the GAL's impressions. Two therapists and a case manager from Health Connect America testified that, when the children were with Father, they were respectful and well-behaved. But, when the children were under Mother's care, the children acted unruly and defiant. According to the testimony, the children would throw tantrums, squeal, moan, run around the office, and kick and hit each other and Mother.

One therapist opined that Mother "enables" the children's behavior, and she recommended that Mother have a mental health assessment. The other therapist was of the opinion that Mother's "anxieties and her hatred towards [Father]" were detrimental to the children's mental health. She also recommended that Mother be mentally evaluated.

The second day of testimony undercut many, if not all of the concerns, expressed by the witnesses from Health Connect America. A psychologist, who gave Mother a psychological assessment after the first day of trial, stated that she found nothing abnormal with Mother. When asked to square her assessment with the concerns expressed by the Health Connect America witnesses, the psychologist testified that the Health Connect America witnesses may have made assumptions about how Mother was parenting, without speaking to Mother. And, in the psychologist's view, some of the statements by the Health Connect America witnesses "were not based on anything other than speculation."

The psychologist also explained why the children might behave differently in the care of Mother and Father. In the psychologist's view, it was not uncommon for children to exhibit different behaviors in the home of one parent versus the home of the other. The behavioral difference could be attributed to the fact that Mother had dealt with the children all their lives whereas Father was relatively new to their lives. The psychologist also pointed to the difference in the voice used by a father versus a mother and the expectations that each parent might be placing on the children.

Only on the last day of the trial did the evidence focus on Father's reasons for seeking a modification of the parenting plan. Father asserted that Mother interfered with his parenting time. He cited an incident on December 10, 2014, when Mother was not home at an agreed-upon time for exchange of the children and failed to contact him. But

_____

[2] During the course of the trial, Father stipulated that Caleb was autistic.

Mother explained that she took the children's half-brother to the emergency room for a chest x-ray. While at the hospital, Mother also had Caleb seen because of an asthma attack earlier in the day at school. To establish that she communicated these events to Father, Mother entered into evidence her phone records. The phone records included a text message sent to Father forty minutes prior to the exchange time detailing their whereabouts and showed a three-minute phone call to Father's phone later that day.

Father also accused Mother of not giving him the children on another occasion around Thanksgiving when they did not have school. Under the agreed parenting plan, Father exercised parenting time with the children on non-school days other than specified holidays. According to Mother, only Jack was out of school the day Father referenced. In addition, because it was close to the Thanksgiving break, which under the plan alternated between Mother and Father, Mother did not believe that Father was entitled to have the children for that additional day.

Although the parenting plan allowed Father two phone calls per week, Father complained that Mother would sometimes not answer the phone. According to Father, when Mother did answer, she would either refuse to let him speak to the children, make noise in the background during the call, or cut the call short.

Father testified to other complaints regarding Mother. Father claimed Mother would tell the children that she could not buy Christmas presents because of Father's failure to pay child support and that she called Father a liar in the children's presence. During Father's time in the military, Mother contacted Father's superiors regarding past due child support. Father also alleged that Mother did not keep him adequately informed about the children while they were in her care. Father complained that Mother failed to advise him of Caleb's asthma attack at school until after the fact and that Mother did not give adequate notice of changes in the children's extracurricular activities.

Mother testified that it was difficult to communicate with Father because he would use obscene words and call her names. She admitted that her conduct when interacting with Father and his wife had been inappropriate on occasion, such as "flipp[ing them] off" at an exchange. Mother explained that Father and his wife videotaped the exchanges, which irritated Mother. But Mother denied ever interfering with Father's parenting time and, in fact, claimed to have offered him more time than he was entitled to receive. Mother also complained that Father undermined her parenting and told the children she was a liar.

B.

At the conclusion of trial, the juvenile court announced that it would modify the permanent parenting plan. Among other things, the court stated its purpose was "to try to

4

do what's in the best interests of these children, particularly Caleb." On May 4, 2016, the court entered its "Final Order," making the following findings:

> The Court found, by a preponderance of the evidence, that the children exhibit different behavior with the Father than with the Mother. The Court found that there is not sufficient evidence to conclude that the Mother has been doing anything wrong with regard to parenting the children. No expert testimony was presented related to any deficiency of the Mother. The testimony showed that the Mother's parenting has been appropriate.

> There has been a material change of circumstances which would warrant a modification of the current Permanent Parenting Plan.

The order then modified the parenting plan by increasing Father's parenting time to 120 days and correspondingly decreasing Mother's parenting time to 245 days. The court set child support at $977 per month and awarded retroactive child support. In addition, the court ordered the parties to split equally the cost of Caleb's private school education.

From this decision, Father filed a notice of appeal. Father argues that the court abused its discretion by not ordering equal parenting time and that the court's "ruling was erroneous, contrary to the weight of evidence and not supported by the record."

## II.

### A.

As an initial matter, we must address Mother's argument that Father's notice of appeal was untimely. An untimely notice of appeal deprives us of subject matter jurisdiction over the appeal. *Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009). Subject matter jurisdiction implicates our power to adjudicate a particular type of case or controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). If we lack subject matter jurisdiction, we are required to dismiss the appeal. *See* Tenn. R. App. P. 3(e); *Arfken & Assocs., P.A. v. Simpson Bridge Co., Inc.*, 85 S.W.3d 789, 791 (Tenn. Ct. App. 2002).

The thirty-day period in which a party aggrieved by the final judgment must file either a post-trial motion or a notice of an appeal begins with the entry of a final judgment. *See* Tenn. R. Civ. P. 59.02; Tenn. R. App. P. 4(a)-(b). Mother points out that the "Final Order" adopting the modified permanent plan was entered on May 4, 2016, but Father did not file his notice of appeal until July 27, 2016. Consequently, our analysis of

whether this appeal was timely turns on whether the "Final Order" constituted a final judgment.

We conclude that the "Final Order" was not a final judgment.[3] The Tennessee Rules of Appellate Procedure define "final judgment" by exclusion. A final judgment is not an "order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Tenn. R. App. P. 3(a). Orders that resolve fewer than all claims or the rights and liabilities of fewer than all the parties are "subject to revision at any time before entry of a final judgment adjudicating all the claims, rights, and liabilities of all parties." *Id.* Our Supreme Court has described a final judgment as a judgment "that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball*, 288 S.W.3d at 836-37.

Clearly, the court's May 4, 2016 order did not resolve the parties' claims. The order did not address Mother's counter-petition for contempt and request that Father's parenting time be supervised. While this case was pending on appeal, this Court "identified at least four issues that appear to remain unresolved." And as a result, on October 25, 2016, we ordered the parties to obtain from the juvenile court a final order disposing of all the pending claims and motions. On November 23, 2016, the court entered an order disposing of outstanding motions and requests for relief. With the entry of the November 23, 2016 order, Father's prematurely filed notice of appeal was treated as filed as of November 23, 2016. *See* Tenn. R. App. P. 4(d).

Alternatively, Mother argues that, because Father's notice of appeal does not reference the "Final Order" entered on May 4, 2016, the scope of his appeal is limited to matters addressed in an order that was referenced in the notice.[4] *See id.* 3(f) ("The notice of appeal . . . shall designate the judgment from which relief is sought[.]"). We disagree. The notice of appeal is not a "review-limiting device." *Id.* 13(a) advisory committee cmt. ("[O]nce any party files a notice of appeal the appellate court may consider the case as a whole."); *Thompson v. Logan*, No. M2005-02379-COA-R3-CV, 2007 WL 2405130, at

---

[3] Mother also argues that no Rule 59 post-trial motion was filed within thirty days of the May 4 order to extend the deadline for the filing of the notice of appeal. Certain post-judgment motions, if timely made, will toll the commencement of the thirty-day period for filing the notice of appeal until the trial court adjudicates the pending post-judgment motion. Tenn. R. Civ. P. 59.01; Tenn. R. App. P. 4(b). Because of our conclusion that the May 4 order was not a final judgment, this argument is similarly unavailing.

[4] Father's notice of appeal referenced a "final judgment of the Juvenile Court of Montgomery County filed on the 1st day of July." The record contains no final judgment filed or entered on that date. Mother posits that Father's notice of appeal may be referring to an order that was entered on July 8, 2016, following a hearing that occurred on July 1, 2016. The July 8, 2016 order addressed, among other things, Caleb's schooling and Father's child support obligation.

6

*16 (Tenn. Ct. App. Aug. 23, 2007) ("[A]n appeal from a final judgment brings up all pre-judgment orders or decisions, and any question of law or fact may be considered.").

B.

We now turn to Father's issues on appeal. We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *see, e.g.*, *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). Evidence preponderates against a trial court's finding of fact when it "support[s] another finding of fact with greater convincing effect." *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005). In weighing the preponderance of the evidence, determinations of witness credibility are given great weight, and they will not be overturned without clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

Trial courts have wide discretion in fashioning parenting plans. *Marlow v. Parkinson*, 236 S.W.3d 744, 748 (Tenn. Ct. App. 2007) (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999)). We do not interfere with these decisions except upon a showing of abuse of that discretion. *See, e.g.*, *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). A trial court abuses its discretion only if it: (1) applies an incorrect legal standard; (2) reaches an illogical conclusion; (3) bases its decision on a clearly erroneous assessment of the evidence; or (4) employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). In other words, if "reasonable minds can disagree as to [the] propriety of the decision made," the trial court's ruling will be upheld. *Eldridge*, 42 S.W.3d at 85 (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)).

Regrettably, in this case our review is hampered by the juvenile court's failure to make specific findings of fact and conclusions of law. As noted by Mother in her brief, the court did specify the material change of circumstance that potentially justified modification of the agreed permanent parenting plan. And as noted by both parties, the court did not specify the statutory best interest factors upon which it relied in making a determination of the children's best interests. The court also failed to find that the plan as modified was in the children's best interest.

Tennessee Rule of Civil Procedure 52.01[5] requires trial courts to make findings of fact and conclusions of law, even if neither party requests them. *See, e.g.*, *Ward v. Ward*,

---

[5] The Tennessee Rules of Civil Procedure governed this proceeding under Tennessee Rule of

No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *14 (Tenn. Ct. App. June 20, 2013). Rule 52.01 provides, in relevant part, "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012).

"[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings." *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010)). The parties themselves deserve to know the factual basis for the trial court's decision on such important matters. *Ward*, 2013 WL 3198157 at *15. Trial courts also need to be as "precise as possible in making child custody findings" in order to facilitate appellate review. *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at 88 (Tenn. Ct. App. Oct. 25, 2011).

Under Rule 52.01, the trial court's order should indicate why and how it reached a decision, and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013). Although the court need not list every applicable statutory factor and an accompanying conclusion for each factor, the trial court is required to "consider all applicable factors." *Id.* (quoting *In re Connor S.L.*, 2012 WL 5462839, at *4). But we have no indication that a trial court has considered all applicable statutory factors apart from its written order. *Anil Const., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014) ("It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders.") (citing *Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977)).

If we cannot determine from the trial court's written order what legal standard it applied or what reasoning it employed, then the trial court has not complied with Rule 52.01. *See Ray v. Ray*, No. M2013-01828-COA-R3-CV, 2014 WL 5481122, at *16 (Tenn. Ct. App. Oct. 28, 2014). The reviewing court must be able to ascertain "the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2579, at 328 (3d ed. 2005)). "Without such findings and conclusions, this court is left to wonder on what basis the

[trial] court reached its ultimate decision." *Hardin v. Hardin*, W2012-00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Dec. 27, 2102) (quoting *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at 88 (Tenn. Ct. App. May 15, 2009)). We face precisely that scenario in this case.

Here, we are left to wonder what material change in circumstance prompted the court's decision to modify the parties' agreed permanent parenting plan. Only a short period of time had elapsed between the approval of the plan and Father's petition to modify. Father's petition alleged various acts by Mother, such as interference with his parenting time and harassment. But the court made no factual findings regarding Father's allegations, did not assess witnesses' credibility, and made no mention of the statutory best interest factors that should have directed its decision. Tenn. Code Ann. § 36-6-106(a) (2017); *see also Pandey*, 2013 WL 657799, at *4. Although Father presented evidence at trial, and the court found, that the children behaved differently when they were with Father than when they were with Mother, the court also found that Mother's parenting was appropriate. Because the court did not make sufficient findings of fact or conclusions of law to explain its decision, we cannot discern whether the court erred or abused its discretion.

Although "the appellate court may choose to conduct its own independent review of the record" in the absence of sufficient findings of fact, it is not prudent to do so in this case. *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *10 (Tenn. Ct. App. July 31, 2013); *see also Lovlace*, 418 S.W.3d at 36; *Brooks v. Brooks*, 992 S.W.2d 403, 404-05 (Tenn. 1999); *Coley v. Coley*, No. M2007-00655-COA-R3-CV, 2008 WL 5206297, at *6 (Tenn. Ct. App. Dec. 12, 2008). Unlike other cases in which we have conducted an independent review, this record lacks conclusions of law and assessments of the witnesses' credibility. Without these determinations, we are ill-equipped to conduct an independent review of the record.

Thus we vacate the juvenile court's order and remand for entry of an order in compliance with Rule 52.01. *See Pandey*, 2013 WL 657799, at *5-6; *Hardin*, 2012 WL 6727533, at *6; *In re Connor S.L.*, 2012 WL 5462839, at *4; *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, *4 (Tenn. Ct. App. Aug. 28, 2012). Pending entry of the trial court's order on remand, the provisions of the current parenting plan entered on May 4, 2016, will remain in effect as a temporary order.

C.

Mother requests that this Court grant her an award of attorney's fees on appeal. We have discretion under Tennessee Code Annotated § 36-5-103(c) to award a prevailing party fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We consider the following factors in our decision to award fees: (1) the requesting party's ability to pay

the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In light of these factors and our decision to vacate and remand the juvenile court's judgment, we decline to award Mother her attorney's fees incurred on appeal.

## III.

Based on the foregoing, we vacate the judgment of the juvenile court and remand for all further proceedings as may be necessary and consistent with this opinion. The current permanent parenting plan will remain in effect pending the entry of an order containing the necessary findings of fact and conclusions of law.

_____
W. NEAL MCBRAYER, JUDGE